**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

**John Traul and Nicki Traul,**

        **Plaintiff,**

**v.**                                 **Case No. 12-CV-2761**

**Nationwide Agribusiness Insurance**
**Company and Nationwide Mutual**
**Insurance Company,**

        **Defendants.**

**<u>MEMORANDUM & ORDER</u>**

Plaintiffs filed this breach of contract action against defendants alleging that plaintiffs had property insurance coverage on the date a fire damaged plaintiffs' property and that defendants, in breach of the insurance contract, refused to cover the loss caused by the fire. Defendants contend that the policy expired at the end of its term—prior to the date of the loss—due to plaintiffs' nonpayment of the renewal premium such that no coverage existed at the time of the loss.

This matter is presently before the court on the parties' cross-motions for summary judgment. Plaintiffs move for summary judgment on the grounds that defendants undisputedly failed to comply with policy provisions requiring notice of cancellation such that the policy remained in effect on the date of the loss. Defendants, in turn, move for summary judgment on the grounds that they had no duty to comply with policy provisions regarding notice of cancellation because the policy was not cancelled but had lapsed when plaintiffs elected not to renew the policy by failing to pay the renewal premium. Plaintiffs have also filed a motion to

strike certain witnesses and exhibits and that motion is also ripe at this time.   As will be explained, plaintiffs' motion for summary judgment is denied; defendants' motion for summary judgment is granted; and plaintiffs' motion to strike is denied as moot.

**Standard**

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a).   A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted).   "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

The fact that the parties here have filed cross-motions for summary judgment does not change the legal standard.   Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *Atlantic Richfield Co. v. Farm Cr. Bank*, 226 F.3d 1138, 1148 (10th Cir. 2000).   "[C]ross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Ultra Clean Holdings, Inc. v. TFG–California, L.P.*, 534 Fed. Appx. 776, 780 (10th Cir. Aug. 21, 2013) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).   "And when the

parties file cross-motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Id.* (quoting *Atlantic Richfield*, 226 F.3d at 1148).

## Facts

The following facts are uncontroverted, have been stipulated by the parties, or are related in the light most favorable to the nonmoving party. Plaintiffs John and Nicki Traul live on and operate a small farm in Bourbon County, Kansas. At all times relevant to this lawsuit, plaintiffs have obtained various insurances policies (farm property protection plus dwelling, personal property, barn, livestock and equipment) through a local agent for defendants Nationwide Agribusiness Insurance Company and Nationwide Mutual Insurance Company (collectively "Nationwide"). Plaintiffs applied for and obtained their initial Farm Property or Farm Package insurance policy with Nationwide for the policy period of August 19, 2010 through August 19, 2011. During this policy period, plaintiffs made timely premium payments through December 2010, when plaintiffs paid off the balance of the premium amount.

On August 5, 2011, plaintiffs received from their local agent a copy of a Farm Property or Farm Package renewal policy with Nationwide. The policy reflected an effective date of August 19, 2011 through August 19, 2012 and a total premium amount of $2930.00. According to Nationwide, it sent to plaintiffs an "Account Bill" for the policy renewal on August 1, 2011 reflecting a monthly premium of $249.16 due on August 19, 2011. Plaintiffs contend that they never received the August 1, 2011 billing statement or any other billing statement from

3

Nationwide regarding the renewal policy.  Nationwide contends that it mailed to plaintiffs on August 23, 2011 a "Notice Regarding Non-Payment of Premium."  Plaintiffs contend that they never received the August 23, 2011 notice.  The notice states, in pertinent part, as follows:

> We appreciate you placing your insurance with us and would like to continue providing coverage.  However, we have not yet received your premium payment for the following policy on your account and this policy will expire as of the date shown:
>
> * * * *
>
> 12:01 A.M. Std Time on 08-19-11
>
> We would be happy to reinstate your policy with no lapse in coverage, if we receive payment on or before 09-05-11.

The notice reflected a minimum due amount of $249.16.  It is uncontroverted that plaintiffs never made any renewal premium payments.

On November 4, 2011, a fire occurred on plaintiffs' property which destroyed plaintiffs' home and its contents.  Plaintiffs immediately notified Nationwide of the loss.  On November 7, 2011, Nationwide sent a letter to plaintiffs advising plaintiffs that the loss was not covered because the pertinent policy was "canceled on August 19, 2011 . . . due to nonpayment of premium before the date of the fire."  The renewal policy contains a "Common Policy Conditions" section which includes a cancellation provision.  That provision, however, is replaced by a "Kansas—Cancellation and Nonrenewal Conditions" endorsement.  The endorsement states, in pertinent part, that Nationwide may cancel the policy by mailing or delivering a to the insured a written notice of cancellation, stating the reasons for cancellation, at least 10 days before the effective date of cancellation if Nationwide cancels for nonpayment of premium; or 30 days before the effective date of cancellation if Nationwide cancels for any

4

other reason.  It is uncontroverted that Nationwide never issued a written Notice of Cancellation to plaintiffs.


**Discussion**

In a diversity case, a federal court applies the substantive law of the forum state, including its choice of law rules.  *Otis Elevator Co. v. Midland Red Oak Realty, Inc*., 483 F.3d 1095, 1101 (10th Cir. 2007).  Kansas follows the general rule that the law of the state where the insurance contract is made controls.  *Brenner v. Oppenheimer & Co*., 273 Kan. 525, 540 (2002). The insurance policy here was issued to Kansas residents through a Kansas insurance agent. The court, then, applies Kansas law to the parties' dispute.

The parties' dispute rests solely on whether defendants cancelled an existing policy such that defendants were required to comply with the cancellation provisions of the policy (including the notice requirements therein) or whether the policy expired or lapsed based on plaintiffs' nonrenewal of the policy.  The distinction between these two concepts is recognized by insurance treatises and Kansas law.  2 *Couch on Insurance* § 30:1 (3d ed. 2010) ("The right to cancel is the right to terminate a policy prior to its expiration as distinguished from a policy's lapse, or expiration by its own terms."); 3 *Holmes' Appleman on Insurance 2d* § 16.7 (1998) ("cancellation . . . is to be distinguished from the use of the term 'termination'"); *Unruh v. Prudential Prop. & Cas. Ins. Co.*, 3 F. Supp. 2d 1204, 1206 (D. Kan. 1998) ("[W]hen the insurer acts to terminate a policy during its term, the policy has been cancelled; when the insured fails to pay a renewal premium before the policy expiration date, . . . the policy has lapsed.").

The distinction is an important one because, as the parties agree, notice is generally not required when a policy terminates or lapses on its own terms. *Couch on Insurance*, *supra*, § 30:2 ("Cancellation must be distinguished from termination of the policy under its own terms since in the latter case, notice is not generally required."); *Appleman on Insurance*, *supra*, § 16.5 (an insurer has no duty to notify the insured of the expiration date of a policy unless notice is required by agreement of the parties or by statute; thus, majority view is that insurer need give no notice of the termination of policy coverage and the policy will expire by its own terms); *Unruh*, 3 F. Supp. 2d at 1207 (no statutory or contractual duty to provide notice of policy lapse).[1]

In support of their argument that plaintiffs' policy lapsed as a result of plaintiffs' failure to pay the renewal premium, defendants rely primarily on *Unruh*. In that case, the plaintiff's spouse was killed in an automobile accident on August 18, 1996. *Unruh*, 3 F. Supp. 2d at 1205. The decedent's most recent automobile insurance policy covered the period of January 6 through July 6, 1996. *Id*. On June 3, 1996, Prudential mailed the decedent an offer to renew the current policy and the decedent failed to respond to the offer to renew before the July 6 policy expiration date. *Id*. Prudential mailed a second notice to the decedent on July 8, informing him that the policy had expired, but providing that he could continue coverage by submitting payment by July 18. *Id*. That date passed without any tender of payment by the decedent. *Id*. In early August, the decedent mailed a check to Prudential in payment of the overdue premium.

---

[1] In the policy at issue, there are no contractual provisions requiring the insurer to provide written notice that a policy has lapsed for nonpayment of renewal premiums. Moreover, plaintiffs' claim in this case is not based on any statutory requirement of notice.

Prudential determined not to reinstate the policy and denied coverage for the August 18 accident. *Id.*

The beneficiary on the policy filed suit seeking a declaration that the policy was in effect at the time of the accident, alleging that Prudential never properly terminated the policy. *Id.* On summary judgment, the district court determined under Kansas law that the decedent had allowed his policy to lapse when he failed to meet the payment deadline and that Prudential had no statutory or contractual duty to provide written notice of termination in that circumstance. *Id.* at 1207. The district court ultimately held that because the policy had lapsed, no contract for insurance coverage existed between the parties on the date of the accident and that Prudential was entitled to summary judgment on that issue. *Id.*

The undisputed facts here are similar to the facts in *Unruh*. Plaintiffs received a renewal policy reflecting an effective date of August 19, 2011 through August 19, 2012 and yet plaintiffs undisputedly failed to make any payment toward the renewal premium at any time. Plaintiffs contend that *Unruh* is distinguishable because the policy in *Unruh* contained a "nonrenewal clause" to the effect that an insured's failure to pay a renewal premium by the date due indicated a rejection of the insurer's offer to renew the policy. *See id.* at 1207. The fact that the policy at issue here contains no similar provision does not render *Unruh* unpersuasive. The court simply looked to the nonrenewal clause in the *Unruh* policy as evidence that the contract did not contain a notice requirement when an insured rejects a renewal offer. *Id.* Here, as in *Unruh*, there is no contractual provision requiring notice when an insured permits a policy to lapse by failing to pay the renewal premium.

Plaintiffs further attempt to distinguish *Unruh* by arguing that the renewal policy here was already "in effect" at the time of the loss by virtue of the delivery of the policy to plaintiffs. According to plaintiffs, defendants' Rule 30(b)(6) witness, Joshua Marshall, testified that the renewal policy was "in effect" until August 19, 2012 and that it would remain "in effect" until the end of the policy period unless it was cancelled.   Plaintiffs have misconstrued Mr. Marshall's testimony.  Mr. Marshall testified only that the policy period reflected on the renewal policy was August 19, 2011 through August 19, 2012.  Mr. Marshall also testified, in general terms rather than about the specific renewal policy here, that a policy that is in place will remain in force for the duration of the policy term so long as the policyholder meets their contractual obligations.  Mr. Marshall's testimony, then, does not support the contention that the renewal policy was somehow "in effect" despite plaintiffs' failure to pay a renewal premium.

Under Kansas law, plaintiffs could continue coverage with defendants under their insurance policy beyond August 19, 2011 only by the payment of the renewal premium prior to the expiration of the grace period.  *See Shepard v. U.S. Fid. & Guar. Co.*, 210 Kan. 652, 653 (1972) (policy written for a definite term expired at the end of that term and the policy could be continued in force beyond that term only by the tender of premium for an additional term; insured was charged with knowledge of the expiration date and the necessity of tendering a premium for renewal, whether he had notice or not); *Midwest Life & Cas. Ass'n v. Employers' Reinsurance Co.*, 136 Kan. 496 (1932) (when insured fails to renew insurance by payment of further premium, insurer's liability terminates at the end of policy period); *Appleman on Insurance*, *supra*, § 16.5 (when insured fails to renew policy, policy will lapse upon expiration of the policy period; coverage may exist for a limited time after lapse where a grace period is in

the policy, but if no payment is ever made during the grace period, no coverage will extend beyond the expiration of the policy).  It is undisputed that plaintiffs never tendered any payment toward the renewal premium.  Accordingly, the policy lapsed or terminated by its own terms at the end of the initial policy period and plaintiffs direct the court to no provision in the policy requiring notice in that circumstance.  Under Kansas law, then, no coverage existed at the time of the loss.  Summary judgment in favor of defendants is warranted.[2]

**Plaintiffs' Motion to Strike**

Plaintiffs have filed a motion to strike certain witnesses identified and documents produced by defendants after the deadline for supplemental disclosures but prior to the close of discovery.  Those witnesses include four "rebuttal witnesses" and "all postal employees of Columbus, Ohio."  In connection with their summary judgment submissions, defendants have submitted the testimony of only one of these witnesses—Bradley McClain—in the form of Mr. McClain's affidavit.  Mr. McClain is defendants' Production Services Manager for Mail Operations and he supervises all functions relating to Nationwide's daily mailing operations in

---

[2] At various points in the course of this litigation, and even in the pretrial order itself, counsel and witnesses for defendants have stated that the policy was "cancelled" or have otherwise used the term "cancellation" when referencing the termination of the policy.   In their summary judgment submissions, however, defendants make clear that they are not arguing that defendants cancelled the policy as that term is used in the policy but that the policy terminated of its own accord.  In any event, defendants' use of the term "cancelled" does not determine defendants' obligations under the insurance policy.  Those obligations are determined solely by Kansas law, the undisputed facts before the court, and the language of the insurance policy itself.  *See Estate v. Nicholson v. Farmers Ins. Co*., 555 F. Supp. 2d 671, 675-76 (E.D. La. 2008) (where Farmers sent renewal notice to insured, who then failed to pay premium, policy expired of its own terms; Farmers did not "cancel" policy and was not obliged to mail notice of cancellation regardless of use of the term "cancel" in its internal documents and databases).

its Columbus, Ohio office.   Mr. McClain's affidavit addresses only the issue of whether defendants in fact mailed to plaintiffs the August 23, 2011 Notice of Non-Payment of Premium. Plaintiffs also move to strike six documents due to defendants' allegedly untimely production. Only two of those documents have been submitted by defendants in support of their motion for summary judgment and those documents have been submitted with Mr. McClain's affidavit—an August 23, 2011 Proof of Mail Register and an August 23, 2011 Job Instruction Sheet concerning the mailing of the Notice of Non-Payment of Premium to plaintiffs.

Because the court has determined as a matter of law that defendants were not required to comply with the cancellation provision of the policy, and because plaintiffs do not contend that defendants were required to provide notice of lapse to plaintiffs, documents concerning whether notice was mailed to plaintiffs are not relevant to the dispositive motions and the court did not rely on Mr. McClain's affidavit or the documents attached thereto in any respect in resolving the dispositive motions.   Regardless of the merits of the motion to strike, then, plaintiffs are not prejudiced by the court's denial of the motion as moot.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for summary judgment (doc. 29) is **denied;** defendants' motion for summary judgment (doc. 31) is **granted**; and plaintiffs' motion to strike (doc. 34) is **denied as moot.**

**IT IS SO ORDERED.**

Dated this 5th day of September, 2014, at Kansas City, Kansas.

10

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge